IN THE CIRCUIT COURT OF MARYLAND
FOR MONTGOMERY COUNTY

ALLSTATE INSURANCE COMPANY
a/s/o Katonia Davis and Kenny Awosika and
John Gruning
P.O. Box 21169
Roanoke, VA 24018

        Plaintiff(s),

    v.                                                           CASE NO.:

TRANE TECHNOLOGIES COMPANY,
LLC, t/a, TRANE
800-E Beaty Street
Davidson, NC 28036

SERVE: Counsel, Margaret Fonshell Ward
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, MD 21031

and

POTOMAC ELECTRIC POWER
COMPANY
701 Ninth Street, NW, Suite 1300
Washington, DC 20068

Serve On: *Resident Agent*
Corporate Creations Network Inc.
2 Wisconsin Circle, Suite 700
Chevy Chase, MD 20815

and

ITRON, INC.,
2111 N. Molter Road
Liberty Lake, WA 99019

Serve on: *Resident Agent*
National Registered Agents, Inc.
1209 Orange Street
Wilmington, DE 19801

        Defendant(s).

## COMPLAINT

Now comes Plaintiff, Allstate Insurance Company a/s/o Katonia Davis and Kenny Awosika and John Gruning, by and through its undersigned attorney and hereby sues Defendant, Trane Technologies plc for causes of action as follows:

## SUMMARY

1. This case arises out of fire damage to an interior townhouse condominium unit located at 11304 Appledowre Way, Germantown, MD 20876 (the "Property") on April 9, 2019. Plaintiff alleges that the start capacitor on the Trane Technologies Company, LLC, t/a, Trane ("Trane") exterior heat pump failed and/or an arcing event on the daughter circuit board of the Digital Cycling Unit ("DCU") connected to the Trane heat pump and manufactured by Comverge, an entity purchased by Itron, Inc. ("Itron"), and installed by Potomac Electric Power Company ("PEPCO") caused the fire at the Property. The fire substantially consumed the structure resulting in $250,000.00 of property damage.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this Court pursuant to Maryland Annotated Code, Courts and Judicial Proceedings Article §§ 4-401(1) and 4-402(d)(1).

3. This Court has jurisdiction over this case pursuant to Maryland Annotated Code, Courts and Judicial Proceedings Article §6-103(b)(1, 2, and 4) as the Defendants (a) transacts business in Maryland; (b) contract to supply goods and/or manufactured products in Maryland; and/or (3) caused tortious injury in Maryland by an act or omission outside of Maryland by regularly soliciting business in Maryland, by engaging in a persistent course of conduct in Maryland,

2

and/or deriving substantial revenue from goods or manufactured products used or consumed in Maryland.

4. Venue is proper in this Court pursuant to Maryland Annotated Code, Courts and Judicial Proceedings Article §§ 6-201(b) and 6-202(3) as the Defendants regularly and systematically conduct business in the State of Maryland and regularly and systematically conduct business in Montgomery County, Maryland.

## THE PARTIES

5. PIC is a Commonwealth of Pennsylvania corporation with a principal place of business located at the above-referenced address and is authorized to issue insurance policies in the State of Maryland.

6. At all times relevant hereto, PIC provided property damage insurance on the Property owned by Katonia Davis and Kenny Awosika and John Gruning. Davis and Awosika owned Unit 583 and Gruning owned Unit 584.

7. Defendant Trane is, upon information and belief, a State of Delaware limited liability company and a subsidiary of Trane Technologies PLC, an Irish Public Limited Company with a principal place of business located at the above-captioned address.

8. At all times relevant hereto, Trane was in the business of designing, manufacturing, assembling, selling, distributing and/or marketing home heating and air conditioning equipment, including the heat pump at issue in this case. Trane regularly conducts business in the State of Maryland.

9. Defendant PEPCO is, upon information and belief, a Commonwealth of Virginia public utility company with a principal place of business located at the above-captioned address.

3

10. At all time relevant hereto, PEPCO was in the business of providing electrical power to residential consumers throughout the Washington, D.C. metro area, including Montgomery County, Maryland, and had installed the DCU at the Property to allow PEPCO to control power flow to the Trane heat pump during peak demand periods.

11. Defendant Itron is, upon information and belief, a State of Washington Corporation with a principal place of business located at the above-captioned address.

12. On information and belief, Itron is in the business of supplying secure solutions for utility providers through innovative devices, networks, software, and services and in 2017 purchased Comverge, the original manufacturer of the DCU at issue in this case.

## FACTS COMMON TO ALL COUNTS

13. On or about April 9, 2019 Plaintiff's insureds, Katonia Davis and Kenny Awosika and John Gruning, owned and occupied homes at 11304 Appledore Way, Germantown, Maryland (hereinafter referred to as the "premises").

14. On April 9, 2019, a fire originated on the front side of the Property within the area occupied by both the Trane model 4TWX5024A1000AA heat pump (the "Product") and the DCU.

15. Based on investigation and evidence evaluation to date, the cause and ignition source of the fire is either, or both, a failure in the start capacitor of the Product and/or an arcing event on the daughter circuit board of the DCU.

16. The fire spread from the Product and/or DCU to the structure at the Property.

17. This fire damage, which resulted in a total loss of the structure on the Property, was directly and proximately caused by the Product and/or DCU.

18. An examination of the remains of the Product and DCU have indicated that the source of ignition was either or both a failure in the Product's start capacitor, likely the internal wound wire

4

came in contact with other wound wire within the capacitor and/or an arcing event on the daughter circuit board of the DCU.

19. Neither the capacitor nor the daughter circuit board are consumer serviced parts of the Product or DCU and there were no signs of post-manufacture repair or damage caused by normal consumer use.

20. As a result of said fire and damages, Plaintiff's insureds made claims with Plaintiff under their relevant policies of insurance for damages sustained as a result of the fire.

21. As a result of said damages, Allstate paid its insured $250,000.00 and pursuant to said policy of insurance and laws of the State of Maryland, Plaintiff became subrogated to any and all claims its insured had for the damages reimbursed by Allstate.

## COUNT I – STRICT LIABILITY
## PLAINTIFF VS. TRANE

22. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

23. Trane is engaged, and at all times relevant hereto was engaged, in the business of designing, assembling, manufacturing, selling, distributing and/or marketing, heat pumps and other consumer HVAC products, and, specifically did so with respect to the Product at issue in this case.

24. Trane designed, manufactured, tested, marketed, distributed, and/or sold the subject Product in a defective condition, unreasonably dangerous to consumers.

25. The aforementioned defects consisted of:

      a.     design defects;

      b.     manufacturing defects;

      c.     component defects;

      d.     use-instruction and/or warnings defects; and/or

  e.  a failure to warn of the design, manufacturing, and/or component defects, and/or properly provide warning and/or safe use instructions.

26. As a direct and proximate result of such defects, Plaintiff suffered damages in an amount of $250,000 to real and personal property, as well as the imposition of additional expenses and hardship.

27. For these reasons, Trane is strictly liable to Plaintiff under the common law and statutory product liability laws of Maryland, including Section 402A of the Restatement (2d) of Torts.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Trane, individually, jointly, severally and/or otherwise in an amount to be determined at trial that is $250,000.00, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – NEGLIGENCE
## PLAINTIFF VS. TRANE

28. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

29. The aforementioned damages were the direct and proximate result of the negligence and carelessness of Trane, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

  a.  failing to exercise reasonable care in the following manner:

    i.  failing to design, manufacture, assemble, transport, market, distribute and/or sell a properly functioning Product;

    ii.  failing to properly inspect and/or test the Product and/or its component parts before distributing to the public;

    iii.  failing to properly determine that the Product and/or its component parts were not in compliance with applicable standards;

6

          iv.     failing to provide safe and adequate warnings or instructions with the Product; and/or

          v.     designing, manufacturing, marketing, distributing and/or selling the Product when Trane knew or should have known that the Product and/or its component parts would be inadequate for the reasons for which it was purchased.

b.     failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

c.     failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

d.     failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

e.     failing to properly monitor the work of all agents and/or employees during the performance of the tasks set forth in subparagraph (a) above to ensure compliance with applicable safety procedures;

f.     failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

g.     failing to perform the tasks set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards; and/or

h.     violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

30. As a direct and proximate result of such conduct, Plaintiffs suffered damages in an amount of $250,000.00 to real and personal property, as well as the imposition of additional expenses and hardship.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Defendant, Trane, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment

of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTIES
## PLAINTIFF VS. TRANE

31. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

32. At the time of the sale and/or distribution of the Product, Trane had reason to know the particular purpose to which the Product would be used (i.e. residential application) and they were being relied upon to furnish a suitable Product. Thus, Trane breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") Maryland Commercial Law Code §2-315, (UCC §2-315) in that the Product was not fit for the particular purpose for which such products are required under normal operation.

33. In addition, Trane breached its implied warranty of merchantability as set out in Maryland Commercial Law Code §2-314(2)(c), (UCC §2-314(2)(c)) in that the Product was not fit for the ordinary uses for which the Product was intended.

34. Plaintiff's damages, as set forth above, occurred as a direct and proximate result of the breach by Trane of its implied warranties of fitness for a particular purpose and merchantability as set out in Maryland Commercial Law Code §2-315 and §2-314(2)(c), (UCC §2-315 and UCC §2-314(2)(c)).

35. Plaintiff has met any and all conditions precedent to recovery for such breaches.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Trane, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real

8

property, and attorney fees, and for such other relief as this Honorable Court shall deem
appropriate under the circumstances.

## COUNT IV – STRICT LIABILITY
## PLAINTIFF VS. PEPCO

36. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though
they were set forth at length herein.

37. PEPCO is engaged, and at all times relevant hereto was engaged, in the business of
designing, assembling, manufacturing, selling, distributing and/or marketing, DCUs and other
residential electric consumer products, and, specifically did so with respect to the DCU at issue in
this case.

38. PEPCO designed, manufactured, tested, marketed, distributed, promoted, installed, and/or
sold the subject DCU in a defective condition, unreasonably dangerous to consumers.

39. The aforementioned defects consisted of:

       a.     design defects;

       b.     manufacturing defects;

       c.     component defects;

       d.     use-instruction and/or warnings defects;

       e.     installation defects, and/or

       e.     a failure to warn of the design, manufacturing, and/or component defects,
             and/or properly provide warning and/or safe use instructions.

40. As a direct and proximate result of such defects, Plaintiff suffered damages in an amount
of $250,000.00 to real and personal property to real and personal property, as well as the imposition
of additional expenses and hardship.

9

41. For these reasons, PEPCO is strictly liable to Plaintiff under the common law and statutory product liability laws of Maryland, including Section 402A of the Restatement (2d) of Torts.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Pepco, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT V – NEGLIGENCE
### PLAINTIFF VS. PEPCO

42. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

43. The aforementioned damages were the direct and proximate result of the negligence and carelessness of PEPCO, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

    a.    failing to exercise reasonable care in the following manner:

        i.    failing to design, manufacture, assemble, transport, market, distribute and/or sell a properly functioning DCU;

        ii.    failing to properly inspect and/or test the DCU and/or its component parts before distributing to the public;

        iii.    failing to properly determine that the DCU and/or its component parts were not in compliance with applicable standards;

        iv.    failing to provide safe and adequate warnings or instructions with the DCU;

        v.    failing to properly train, supervise, educate, and monitor its employees, agents, subcontractors, and/or designees during the installation process of the DCU; and/or

10

vi.  designing, manufacturing, marketing, distributing and/or selling the DCU when PEPCO knew or should have known that the DCU and/or its component parts would be inadequate for the reasons for which it was purchased.

b.  failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

c.  failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

d.  failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

e.  failing to properly monitor the work of all agents and/or employees during the performance of the tasks set forth in subparagraph (a) above to ensure compliance with applicable safety procedures;

f.  failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

g.  failing to perform the tasks set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards; and/or

h.  violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

44. As a direct and proximate result of such conduct, Plaintiff suffered damages in an amount of $250,000.00 to real and personal property, as well as the imposition of additional expenses and hardship.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Defendant, PEPCO, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT VI – BREACH OF WARRANTIES
## PLAINTIFF VS. PEPCO

45. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

46. At the time of the sale, installation, and/or distribution of the DCU, PEPCO had reason to know the particular purpose to which the DCU would be used (i.e. residential application) and they were being relied upon to furnish a suitable DCU. Thus, PEPCO breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") Maryland Commercial Law Code §2-315, (UCC §2-315) in that the DCU was not fit for the particular purpose for which such products are required under normal operation.

47. In addition, PEPCO breached its implied warranty of merchantability as set out in Maryland Commercial Law Code §2-314(2)(c), (UCC §2-314(2)(c)) in that the DCU was not fit for the ordinary uses for which the DCU was intended.

48. Plaintiff's damages, as set forth above, occurred as a direct and proximate result of the breach by PEPCO of its implied warranties of fitness for a particular purpose and merchantability as set out in Maryland Commercial Law Code §2-315 and §2-314(2)(c), (UCC §2-315 and UCC §2-314(2)(c)).

49. Plaintiff has met any and all conditions precedent to recovery for such breaches.

**WHEREFORE**, Plaintiff, respectfully requests judgment against PEPCO, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

12

## COUNT VII – STRICT LIABILITY
## PLAINTIFF VS. ITRON

50. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

51. Itron is engaged, and at all times relevant hereto was engaged, in the business of designing, assembling, manufacturing, selling, distributing and/or marketing, DCUs and other residential consumer electric products through local utility providers, and, specifically did so with respect to the DCU at issue in this case.

52. Itron designed, manufactured, tested, marketed, distributed, and/or sold the subject DCU in a defective condition, unreasonably dangerous to consumers.

53. The aforementioned defects consisted of:

      a.     design defects;

      b.     manufacturing defects;

      c.     component defects;

      d.     use-instruction and/or warnings defects; and/or

      e.     a failure to warn of the design, manufacturing, and/or component defects, and/or properly provide warning and/or safe use instructions.

54. As a direct and proximate result of such defects, Plaintiff suffered damages in an amount of $250,000.00 to real and personal property, as well as the imposition of additional expenses and hardship.

55. For these reasons, Itron is strictly liable to Plaintiff under the common law and statutory product liability laws of Maryland, including Section 402A of the Restatement (2d) of Torts.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Itron, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus

costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT VIII – NEGLIGENCE**
**PLAINTIFF VS. ITRON**

56. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

57. The aforementioned damages were the direct and proximate result of the negligence and carelessness of Itron, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

      a.      failing to exercise reasonable care in the following manner:

            i.      failing to design, manufacture, assemble, transport, market, distribute and/or sell a properly functioning DCU;

            ii.      failing to properly inspect and/or test the DCU and/or its component parts before distributing to the public through residential electric public utility companies like PEPCO;

            iii.      failing to properly determine that the DCU and/or its component parts were not in compliance with applicable standards;

            iv.      failing to provide safe and adequate warnings or instructions with the DCU; and/or

            v.      designing, manufacturing, marketing, distributing and/or selling the DCU when Itron knew or should have known that the DCU and/or its component parts would be inadequate for the reasons for which it was purchased and/or supplied.

      b.      failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

      c.      failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

14

d.    failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

e.    failing to properly monitor the work of all agents and/or employees during the performance of the tasks set forth in subparagraph (a) above to ensure compliance with applicable safety procedures;

f.    failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

g.    failing to perform the tasks set forth in subparagraph (a) above in conformity with the prevailing industry and governmental specifications and standards; and/or

h.    violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

58. As a direct and proximate result of such conduct, Plaintiff suffered damages in an amount of $250,000.00 to real and personal property, as well as the imposition of additional expenses and hardship.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Defendant, Itron, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT IX – BREACH OF WARRANTIES
## PLAINTIFF VS. ITRON

59. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

60. At the time of the sale and/or distribution of the DCU, Itron had reason to know the particular purpose to which the DCU would be used (i.e. residential application) and they were being relied upon to furnish a suitable DCU. Thus, Itron breached the implied warranty of fitness

15

for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") Maryland Commercial Law Code §2-315, (UCC §2-315) in that the DCU was not fit for the particular purpose for which such products are required under normal operation.

61. In addition, Itron breached its implied warranty of merchantability as set out in Maryland Commercial Law Code §2-314(2)(c), (UCC §2-314(2)(c)) in that the DCU was not fit for the ordinary uses for which the DCU was intended.

62. Plaintiff's damages, as set forth above, occurred as a direct and proximate result of the breach by Itron of its implied warranties of fitness for a particular purpose and merchantability as set out in Maryland Commercial Law Code §2-315 and §2-314(2)(c), (UCC §2-315 and UCC §2-314(2)(c)).

63. Plaintiff has met any and all conditions precedent to recovery for such breaches.

**WHEREFORE**, Plaintiff, respectfully requests judgment against Itron, individually, jointly, severally and/or otherwise in an amount of $250,000.00 to real and personal property, plus costs incident to this suit, delay damages, damages for interference with enjoyment of real property, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

Respectfully submitted this 6th day of April, 2022.

_____ /s/ Charles J. Fratus _____
Charles J. Fratus, Esq.
CFP ID #9612170306
FRATUS LAW GROUP, LLC
566 Baltimore Annapolis Blvd.
Severna Park, MD 21146
(P) 410.295.7100
(F) 844.240.1557
(E) Chuck@FratusLaw.com
*Attorney for Plaintiff*

16